# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| INVACARE CORPORATION, | )<br>) |
| Plaintiff, | ) Case No.: 2:16-cv-0190-GMN-CWH |
| v. | ) |
| | ) **ORDER** |
| DESERT MEDICAL EQUIPMENT;<br>BRYAN SCHULTZ, | )<br>) |
| Defendants. | ) |
| DESERT MEDICAL EQUIPMENT;<br>BRYAN SCHULTZ, | )<br>) |
| Counterclaimants, | ) |
| v. | ) |
| INVACARE CORPORATION, | ) |
| Counterdefendant. | ) |

Pending before the Court is the Plaintiff/Counterdefendant Invacare Corporation's ("Plaintiff's") Motion to Dismiss (ECF No. 12) the Counterclaims (ECF No. 9) filed by Defendants/Counterclaimants Desert Medical Equipment ("Desert Medical") and Bryan Schultz ("Schultz") (collectively, "Defendants"). Defendants filed a Response (ECF No. 13), and Plaintiff filed a Reply (ECF No. 14).

## I. BACKGROUND

This case arises out of an alleged breach of a commercial lease agreement regarding medical equipment. (*See* Am. Compl., ECF No. 4). On November 25, 2013, Schultz, President of Desert Medical, "entered into a Lease on behalf of Desert Medical with Invacare, agreeing to

lease 120 units of Invacare's Leo Model scooters (the "Scooters") for a term of 36 months" at $3,609.85 per month (the "Lease"). (Defs.' Ans. & Countercls. 8:2–6, ECF No. 9). Schultz personally guaranteed the Lease. (*Id.* 8:4 n.1). About a year prior to the execution of the Lease, the United States Food and Drug Administration ("FDA") issued a recall on the Scooters, about which allegedly Plaintiff knew and Defendants did not. (*Id.* 8:13–20). Defendants allege that "[s]ometime after the commencement of the Lease . . . it became evident [to them] that the seats on the Scooters were defective." (*Id.* 8:7–8). Thereafter, Defendants stopped paying on the Lease. (*Id.* 9:7–8).

Plaintiff filed its Complaint in this Court on February 1, 2016. (Compl., ECF No. 1). On the same day, Plaintiff filed its Amended Complaint as a matter of right, alleging the following claims: (1) breach of contract against Desert Medical, (2) breach of guaranty against Schultz, (3) breach of the implied covenant of good faith and fair dealing against both Defendants, and (4) unjust enrichment against Desert Medical. (Am. Compl. 3:16–5:19). On February 29, 2016, Defendants filed their Answer, which also asserted the following Counterclaims: (1) "Fraudulent in the Inducement" and (2) "Unfair Trade Practices pursuant to 73 Pa. Stat. Ann. § 201-3." (Defs.' Ans. & Countercls. 9:14–10:18). On March 24, 2016, Plaintiff filed the instant Motion to Dismiss Defendants' Counterclaims. (ECF No. 12).

## II.     LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 12(b)(6) applies equally to a counterclaim. *See King County v. Rasmussen*, 299 F.3d 1077, 1090 (9th Cir. 2002) (affirming 12(b)(6) dismissal of defendant's counterclaims).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Plaintiff seeks to dismiss Defendants' first counterclaim, fraudulent inducement, because it is "both time barred and insufficiently pled." (Pl.'s Mot. to Dismiss Countercls. ("Pl.'s MTD Countercls.") 4:11–12, ECF No. 12).[1]

### A. Statute of Limitations

First, the parties do not dispute that the Pennsylvania two-year statute of limitations for fraud applies here. *See* 42 Pa. Cons. Stat. § 5524(7). "[I]n cases of fraud[,] the statute [of limitations] runs only from discovery, or from when, with reasonable diligence, there ought to have been discovery." *Deemer v. Weaver*, 187 A. 215, 216 (Pa. 1936). "Reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Specifically, "[w]e evaluate the [party's] conduct in terms of what he should have known at a particular time by following a course of reasonable diligence. If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Labs.*, 505 A.2d 973, 988 (Pa. Super. Ct. 1985). "[T]his question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause," unless "reasonable minds would not differ in [this] finding." *Fine*, 870 A.2d at 858–59. In other words, "[o]nly where the facts are undisputed and lead unerringly to the conclusion that the length of time it took the [party] to

---

[1] Plaintiff also asserts that "Defendants' second counterclaim under the [Unfair Trade Practices statute] fails because Defendants lack standing." (Pl.'s MTD Countercls. 4:20–21). In Response, Defendants concede that they "likely do not have standing to maintain a private right of action against [Plaintiff] . . . [and] for the purposes of this legal proceeding, [they] abandon their second counterclaim." (Defs.' Resp. to MTD 9:14–20, ECF No. 13). Accordingly, the Court accepts the voluntary dismissal of Defendants' second counterclaim.

discover the injury or its cause was unreasonable may the question be decided as a matter of law on summary judgment." *Burnside*, 505 A.2d at 988.

Here, Defendants' Counterclaim asserts that "[t]o induce Desert Medical to enter into the Lease, Plaintiff purposefully failed to inform Desert Medical of the FDA's recall on the Scooters." (Defs.' Ans. & Countercls. 9:18–19). Defendants contend that they discovered the Scooters' defects "sometime after the commencement of the Lease." (*Id.* 8:7–8, 8:21–22).

Plaintiff first argues that there is no factual dispute as to when Defendants became aware of the defects because Defendants admit their awareness occurred "in 2013, only 'months after execution of the Lease and Personal Guaranty.' Counterclaim at 8 ¶ 9." (Pl.'s MTD Countercls. 8:8–11). However, paragraph 9 of Defendants' Counterclaims states: "After learning about these hazards (which occurred months after the execution of the Lease and Personal Guaranty), Desert Medical contacted Invacare with the hopes of obtaining an appropriate remedy." (Defs.' Ans. & Countercls. 8:21–23). The parties do not dispute that the Lease was signed on November 25, 2013. (*See* Am. Compl. ¶ 13); (Defs.' Ans. & Countercls. 2:21–22). Defendants filed their Counterclaims on February 29, 2016 (*see* ECF No. 9), so any injury discovered prior to February 28, 2014 would be time-barred. However, the difference between the Lease execution and the statute of limitations cut-off is only about 3 months. Based on the plain language of Defendants' Counterclaims, which states "months after the execution of the Lease," the Court finds that reasonable minds could differ as to the date of discovery of the alleged injury, and this issue remains a factual dispute at this time.

Further, the statute of limitations inquiry also includes when Defendants should have known about the issue. *See Deemer*, 187 A. at 216. Plaintiff additionally argues that Defendants should have known about the FDA recall prior to the execution of the Lease because it was "publicly available" online if Defendants had "exercised reasonable suspicion in entering into the Lease." (Pl.s' MTD Countercls. 8:11–9:2). Defendants assert that they had no

reason to investigate any alleged fraud by Plaintiff until they discovered defects with their particular scooters, at which time they looked into the defects, found out about the FDA recall, and realized that Plaintiff allegedly knew about the FDA recall prior to the execution of the lease. (Defs.' Resp. to MTD 6:6–24, ECF No. 13).

The Court is not convinced that the facts here "are undisputed and lead unerringly to the conclusion that the length of time it took [Defendants] to discover the injury or its cause was unreasonable." *Burnside*, 351 A.2d at 988; *see also Stafford Inv. LLC v. Vito*, Nos. 04-3182, 06-1112, 06-4424, 2008 WL 5062136, at *3 (E.D. Pa. Dec. 1, 2008) ("Unless there is a clear basis for the court to determine when [the party] knew or should have known of the existence of [its] cause of action, the issue of whether the [party] had a reasonable opportunity to discover the violation is a question to be resolved by a jury."). Accordingly, the Court finds that when Defendants should have known about their injury also currently remains a factual dispute.

### B.  Sufficiency of the Counterclaim

Next, as to the sufficiency of the counterclaim, fraudulent inducement is a fraud claim which must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). To plead with particularity, a party must plead "the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct alleged so that they can defend against the charge. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

To establish a claim of fraudulent inducement, Defendants must properly allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6)

the resulting injury was proximately caused by the reliance." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005).

      Here, Defendants' Counterclaim alleges that "[t]o induce Desert Medical to enter into the Lease, [Plaintiff] purposefully failed to inform Desert Medical of the FDA's recall on the Scooters." Further, "[i]n reasonable reliance of the representations that Invacare's representative communicated with [Plaintiff], [Defendants] entered into the various contracts with [Plaintiff]." (Defs.' Ans. & Countercls. 9:20–22). These conclusory statements, without more, fail to plead with particularity the "the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Accordingly, the Court dismisses this counterclaim but gives Defendants leave to amend to allege further facts that provide the particularity required for fraud-related claims.

### IV. CONCLUSION

      **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Defendants' Counterclaims (ECF No. 12) is **GRANTED**. Defendants' first counterclaim, fraudulent inducement, is dismissed without prejudice, with leave to amend. Additionally, the Court accepts the voluntary dismissal of Defendants' second counterclaim.

      **IT IS FURTHER ORDERED** that Defendant shall have until **January 27, 2017**, to file an Amended Counterclaim. Failure to file an amended counterclaim by this date shall result in the Court dismissing this counterclaim with prejudice.

      **DATED** this \_\_\_10\_\_\_ day of January, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court